UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT NORTH CAROLINA
GREENSBORO DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| RICHARD W. HORNUNG | ) | Case No. 09-51461 |
| KRISTIN L. HORNUNG | ) | Chapter 7 |
| | ) | |
| Debtors | ) | |
| | ) | |

MEMORANDUM OF BANKRUPTCY ADMINISTRATOR
IN SUPPORT OF MOTION TO DISMISS

1.  Introduction and Issue Presented.

Whether granting relief to the Debtors under Chapter 7 would be an abuse of the provisions of that Chapter under 11 U.S.C. §707(b)(1) and (3), so that the Debtors' case should be dismissed under those provisions?

2.  Facts Presented.

This Chapter 7 petition was filed by the Debtors on July 23, 2009. The Debtors are above median income debtors. On the Petition, the Debtors disclose that their debts are "primarily consumer debts." Petition, Exhibit 2. The Debtors have admitted that their liabilities are primarily consumer debts. Debtors' Responses to BA's First Request for Admissions, Exhibit 15.

On Schedule A, the Debtors list their home at 665 Summerford Court NW, Concord, NC, as having a current value of $420,000. The property was purchased by the Debtors in March, 2007, for $442,000. On the date of the petition, the Debtors owed approximately $353,439 to Wells Fargo Bank on a first mortgage, and $88,360.00 to Wells Fargo on a second mortgage, for a total of $441,799.

Including insurance and taxes, the monthly payment on the two mortgages is $2985.36. Petition, Schedule J, Exhibit 2. The Debtors pay interest only on their mortgages, and do not reduce principal.

In addition, the debtors spend $287.77 for electricity and heating fuel; $307.54 for communications, and $150.00 for home maintenance. Id. Therefore, the Debtors' total housing

related cost is $3730.67[1]. The IRS local standards for these factors for a family of four in Cabarrus County was $1677.00 in mid-2009. Exhibit 26.

The Debtors disclose $31,432.37 in unsecured debt, which is primarily credit card debt. Petition, Exhibit 2. They also own a time share at Disney World which is encumbered in the amount of $26,490.62, which they are surrendering. They own two 2009 (new) Ford vehicles, which they purchased 11 days before filing their petition. The monthly payments for these vehicles total $1017.06. Exhibits 9, 10.

Mr. Hornung is employed. His base salary is $87,000 per year. He also receives payment for overtime and commissions, so that his compensation for the year 2009 was $100,972.94.[2] Exhibit 6. Ms. Hornung is a homemaker. Therefore, their housing cost of $44,768.80, on an annual basis, equates to 44% of their gross income. They have two preschool children.

On October 20, 2009, the United States Bankruptcy Administrator filed the instant Motion to Dismiss case pursuant to Sections 707(b)(1) and (3).


3.      Argument

A. Introduction.

Section 707(b)(1) of the Bankruptcy Code provides that a court may dismiss a Chapter 7 case filed by an individual debtor whose debts are primarily consumer debts if it finds that the granting of relief would be "an abuse." Section 707(b)(3), applicable to this case, provides:

> **(3)** In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(I) of such paragraph does not arise or is rebutted, the court shall consider–
>
> **(A)** whether the debtor filed the petition in bad faith; or
>
> **(B)** the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

---

[1] The Debtors also have a home security system at a cost of $36.95 per month, which it does not appear the Debtors accounted for.

[2] The Debtors also receive expense reimbursement checks from his employer in variable amounts with a mean of several hundred dollars each month. This income is not reflected on the petition, or in this calculation.

11 U.S.C.A. § 707 (2008). This section is generally accepted to be a codification of pre-BAPCPA case law. In re Wright, 364 B.R. 640 (Bankr. N.D. Ohio 2007). As amended by BAPCPA, the Bankruptcy Code does not incorporate a presumption of granting the relief sought by the Debtor, and abuse, if found, is not required to be "substantial." 11 U.S.C. § 707(b)(1). In the Fourth Circuit, the leading case on the "totality of the circumstances" test for abuse is In re Green, 934 F. 2nd 568 (4th Cir. 1991). In that case, the Fourth Circuit identified the following factors to be evaluated in the "totality of the circumstances" approach:

> (1) Whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment;
>
> (2) Whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay;
>
> (3) Whether the debtor's proposed family budget is excessive or unreasonable;
>
> (4) Whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition; and
>
> (5) Whether the petition was filed in good faith.
>
> *Id [934 F.2nd]*. at 572 (citations omitted). The Fourth Circuit also stated "that the majority of the cases hold that the debtor's ability to repay is the primary factor to be considered."

In re Beitzel 333 B.R. 84, 88 (Bankr. M.D.N.C. 2005). Applying each of these factors to this case, beginning with the "primary" factor, the BA contends as follows.

B. Ability to repay creditors.

  Essentially, the BA asserts that if the Debtors obtained more affordable housing and vehicles, they would be able to repay a portion of their debts. The Debtors have a fairly high and stable income, even without a contribution from Mrs. Hornung, and should be able to pay a portion of their unsecured debt. If the Debtors' housing and utility payments were reduced to the IRS maximum allowance, $1677.00, the Debtors would have the ability to pay a substantial dividend to unsecured creditors, perhaps paying their unsecured creditors in full. See In re Moreland, Case No 05-10519 (M.D.N.C. 2005)(Waldrep, J.)(adjusting Debtors' budget to reflect a more reasonable housing expense indicates disposable income for a Chapter 13 plan); accord, In re Rhoades, 2009 WL 159388 (Bankr. M.D.N.C. 2009). As this Court stated in In re Crink, in

assessing the ability to repay creditors:

> It is appropriate for the Court to consider whether the expenses claimed by a debtor can be reduced significantly without depriving the debtor of adequate food, clothing, shelter, or other necessities of life. *In re McCain,* No. 05-14382C-7G, 2006 WL 4458679 at *3 (Bankr.M.D.N.C. June 16, 2006) (citing *Engskow,* 247 B.R. at 317). The Bankruptcy Administrator argues that the Court should reduce the Debtors' budget to a reasonable amount, using the IRS standards as a guide. As stated above, the Debtors' housing expenses are excessive, and they could obtain alternative housing for much less. In addition, their transportation costs are excessive and should be reduced.

In re Crink 402 B.R. 159, 173 -174 (Bkrtcy.M.D.N.C.,2009)(footnotes omitted). With respect to the vehicles, the Debtors' payment is $39.06 more than the IRS allowance. In <u>In re Rhoades, supra,</u> the Court used the IRS allowance as a factor in calculating the ability to pay, which is this case would result in a large surplus for the Debtors. Therefore, this factor tends to show abuse.

<u>C. Sudden Illness, Calamity, Disability or Unemployment.</u>

With respect to this factor, the Debtors admitted that "the Debtors have not suffered any sudden illness, disability, or calamity, within the six months prior to the filing of the bankruptcy case." <u>Request for Admissions, Exhibit 15.</u> The Debtors also admitted "The Debtors are employed and have steady employment." <u>Id.</u>

The BA contends that these admissions are dispositive as to this factor. Therefore, this factor tends to show abuse. To the extent that the Debtors contend that Mr. Hornung's lay off and period of unemployment in August and September 2008 precipitated the bankruptcy filing, the BA notes the large bonus or severance payments which accompanied the layoff, and the rapidity with which Mr. Hornung found other gainful employment.

<u>D. Consumer purchases far in excess of ability to pay.</u>

In their answers to Interrogatories, the Debtors state that their bankruptcy filing was precipitated by "Debtor's inability to maintain financial obligations," which indicates excessive spending. <u>Debtors' Answers to Interrogatories, Exhibit 14.</u> In this case, it appears that the Debtors purchased more house than they could afford. The house required furnishing and an irrigation system, purchases made on credit. Even before the purchase of the new vehicles immediately before filing, they had large vehicle expenses incurred for 2007 and 2008 vehicles. In August 2008, the Debtors purchased the time share. Even after Mr. Hornung's job change, it does not appear that the Debtors made efforts to tighten their belts. During the year before filing, the Debtors kept most of their credit cards close to the credit limit, making minimum payments

on the cards.[3] Therefore, this factor tends to show abuse.

E. Excessive or Unreasonable Family Budget.

The BA argues that the Debtors could provide a substantial return to creditors if their excessive housing costs were reduced. The standard IRS housing allowance for a family of 4 in Cabarrus County at the time of filing was $1677.00. The Debtors pay well more than twice that amount to live in a home which is valued at $449,000 (tax value). Exhibit 5. The Debtors apparently have little or no equity in their home. See Petition, Exhibit 1. The Debtors have essentially funded a beautiful home at the expense of their unsecured creditors, and its cost is excessive. "A debtor's budget may be unreasonable or excessive based on a high mortgage payment." In re Beitzel, 333 B. R. 84, 88 (M.D.N.C. 2005); accord, Shaw v. United States Bankruptcy Administrator, 310 B. R. 538, 541 (M.D.N.C. 2004)(mortgage payment of $3349.00 unreasonable); In re Rhoades, 2009 WL 159388 (Bankr. M.D.N.C. 2009); In re Crink, 402 B. R. 159 (Bankr. M.D.N.C. 2009); In re Moreland, 2005 WL 1925460 (Bankr. M.D.N.C. 2005); In re Schmonsees, 2001 Bankr. Lexis 1896 (Bankr. M.D.N.C. 2001)(Stocks, J).

In assessing the Debtors' budget, the court is not bound by the amounts spent or listed. "Instead, it is appropriate to consider whether the expenses claimed by a debtor can be reduced significantly without depriving the debtor of adequate food, clothing, shelter and other necessities of life." In re Hallstrom Case No. 02-80013C-7D (Bankr. M.D.N.C. 2002)(Stocks, J). In this case, the Debtors' housing expenses may be substantially reduced without depriving the Debtors of comfortable housing.

In In re Rhoades, supra, this court considered the issue of excessive housing costs. In that case, the Debtors owned a 3327 square foot house, with monthly housing expenses of $ 3,302.16, with no apparent equity. The Court found the Debtors' housing budget to be unreasonable.

In In re Kaminski, the Debtors had housing expenses of $1856.12, compared to the applicable IRS housing allowance of $841.00. The Court found the expenditures excessive under Section 707(b)(3), stating:

> Still, the goal of the IRS housing allowance generally aligns itself with the Court's aim in a § 707(b)(3) analysis: to ensure that a debtor, while afforded with the means by which to obtain adequate shelter, is not devoting excessive financial resources toward their housing to the detriment of the debtor's creditors. As such, this Court has found that, "as a pole for

---

[3] While the Debtors' unsecured debt is not extreme, it should be noted that the average outstanding credit card debt for households using credit cards was $10,679 at the end of 2008, less than 1/3 of the debt in this case. CreditCards.com

guidance, the expense figures provided in the 'means test' can be helpful when determining the reasonableness of a debtor's expenses under § 707(b)(3)." *In re Gonzalez,* 378 B.R. at 175. As a practicable matter, therefore, when a debtor's housing allocation significantly exceeds the IRS allowance, a viable justification for the necessity and reasonableness of that housing expense should be offered.

Within this framework, the Debtors' allocation of $1,856.12 for housing appears impermissibly high given the lack of any special circumstances offered by the Debtors to warrant an expenditure more than twice the IRS allowance.

In re Kaminski 387 B.R. 190, 196 (Bankr.N.D.Ohio 2008). Therefore, the court held that the filing of the that case under chapter 7 was an abuse. See, In re Talley 389 B. R. 741 (Bankr. W. D. Wash. 2008)(mortgage expense of $3130, three times IRS standard, abusive); In re Hoffman Case No. 1:07-03771MDF (Bankr. M.D. Pa. 2008) (housing expense more than twice IRS standard abusive).

In this case, the Debtors have a family of four, with two pre-school children, in a 5 bedroom home of 4000-5000 square feet. They do not need that much space. Second, the debtors have lived in the house less than 3 years, and are not tied to the house. Third, there is no equity in the house. Fourth, as the IRS guidelines indicate, the Debtors can find suitable housing at a lower expense.

The present case may be distinguished from In re Beitzel 333 B. R. 84 (Bankr. M. D. N. C. 2005), where the Court found a large housing expense to not be abusive, not only by the changes made in the Section 707(b) standard by BAPCPA, but by the facts that the home in that case was substantially more modest, and the costs much lower.

The Debtors point to their very conservative non-housing monthly expenses as evidence of a reasonable budget. However, there are some excessive expenses even aside from the housing cost, in health care costs and preschool expenses.

Therefore, this factor tends to show abuse.

F. Accurate Schedules and Statements.

"The importance of having a debtor submit complete and accurate bankruptcy schedules is paramount; the bankruptcy system relies heavily on self-reporting by debtors." In re Sloop, Case No. 05-53914 (Bankr. M.D.N.C. 2005)(Waldrep, J.) The issue of whether the Debtors' schedules and statements are accurate in this case is an issue for trial. However, there are several

issues which may be forecasted – (1) the non-disclosure and effect of the large expense reimbursements; (2) possible unscheduled debt; (3) unusual financial transactions.

G. Good Faith under Green and Section 707(b)(3)(A) .

With respect to good faith, the BA contends that purchases of new vehicles 12 days before filing a Chapter 7 bankruptcy is not good faith.  Eve of bankruptcy purchases may be analyzed as financial bad faith (a Green factor) or non-financial bad faith under Section 707(b)(3)(A).  See In re Crink, 402 B. R. 159 (Bankr. M.D.N.C. 2009); In re Martin 417 B. R. 354 (Bankr. M.D.N.C. 2009)(eve of bankruptcy purchases inconsistent with good faith).  By either analysis, incurring debt of $69,000 immediately before filing shows a lack of good faith, and a desire to seize the advantage over their creditors.  Upon information and belief, the Debtors consulted with bankruptcy counsel before making these purchases.

The fact that the Debtors' car payments before the purchases were even higher does not matter; if they were going to trade vehicles, they easily could have purchased far less expensive and/or used vehicles.

4. Conclusion.

For the reasons set forth herein, the BA contends that allowing the Debtors to continue in Chapter 7 would constitute an abuse of the Bankruptcy Code within the meaning of Section 707(b)(3) and this case should be dismissed.

This the _21st_ day of _January_, 2010.

                                            Michael D. West, Esq.
                                            U.S. Bankruptcy Administrator

                                            By_s/Robert E. Price, Jr.__
                                            Robert E. Price, Jr.
                                            Staff Attorney

State Bar No. 9422

Of Counsel:

Office of the Bankruptcy Administrator
P.O. Box 1828
Greensboro, North Carolina 27402-1828
tel: 336.358.4179
fax:336.358.4185

CERTIFICATE OF SERVICE

This is to certify that on this date, the foregoing document was served upon the following parties or counsel by electronic filing and/or depositing a copy in the United States mail, first class postage prepaid, addressed as follows:

**Brian Hayes**
P. O. Box 444
Concord, NC 28026-0444

This the _21st_ day of _January_, 2010.

By_s/Robert E. Price, Jr._
Bankruptcy Administrator
Staff Attorney